NORTH BARRINGTON DEVELOP-
MENT, INC., Plaintiff,

v.

Richard FANSLOW, et al., Defendants.

No. 80 C 2644.

United States District Court,
N. D. Illinois, E. D.

Oct. 9, 1980.

208

Ronald H. Balson, Chicago, Ill., for plaintiff.

Robert R. Tepper, Rosenthal & Schanfield, David A. Bridewell, Ashcraft & Bridewell, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff, North Barrington Development, Inc., filed a four count complaint against defendants, Richard Fanslow, CCC General Contracting Co. (CCC), and Skokie Federal Savings and Loan Association (Skokie). The complaint alleges that plaintiff, Fanslow and CCC entered into a real estate development contract concerning a housing project entitled Knights of Huntington. Skokie was involved in the transaction to the extent that it promised to provide financing to the ultimate purchasers of the buildings in the project. Various disputes arose between the parties concerning the agreement. These disputes were resolved in a compromise agreement entered into on May 15, 1979. Plaintiff, however, felt that the May 15 agreement was being violated and filed suit against the defendants, including Skokie, in the Chancery Division of the Circuit Court of Cook County, Illinois. This suit was also settled in a second written settlement agreement. Plaintiff believes that this settlement agreement has also been breached and has brought this suit.

The instant complaint alleges that the defendants engaged in a conspiracy to defraud plaintiff and breached the settlement agreement. Specifically, Count I alleges that defendants' fraud violated the Home Owners' Loan Act (HOLA), 12 U.S.C. § 1461 *et seq.;* Count II alleges that the defendants' fraud violated the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq.* Counts III and IV are based on state related common law violations. Jurisdiction is invoked under 28 U.S.C. §§ 1331, 1337 and the principles of pendent jurisdiction. Presently before the court is defendants' motion to dismiss the complaint for failure to state a cause of action.

The essence of the alleged scheme is that defendant Fanslow fraudulently induced plaintiff into signing a contract whereby Fanslow, through his closely held corporation, CCC, would acquire beneficial title to

a certain tract of land in Mount Prospect, Illinois, and construct apartment buildings thereon. Plaintiff was to be responsible for all advertisements and was to enter into contracts for sale of the buildings as well as entering into leases with tenants. Plaintiff further alleges that defendants never intended to fulfill the contracts; and that defendants' fraud and breach of contract included false promises of financings, and threats of economic loss to prospective buyers, lessees and plaintiff unless certain new conditions were agreed to. Additionally, this fraud and breach of contract allegedly caused several prospective buyers to bring suit against plaintiff.

### Count I

Plaintiff's complaint alleges in great detail the actions of the defendants that are said to constitute a violation of HOLA. Count I essentially alleges that the participation of defendant Skokie in the scheme to defraud plaintiff is a "dishonest practice in violation of § 1464." Section 1464 of HOLA provides for the establishment of Federal Savings and Loan Associations and authorizes the Federal Home Loan Bank Board (Board) to promulgate and enforce rules and regulations relating to the Act. The Act's purpose and scope exclusively concern the conduct of Federal Savings and Loan Associations and the Board in its regulatory and rulemaking capacity. The Act, on its face, does not deal with the conduct of private individuals or corporations. Consequently, unless plaintiff can state a cause of action against Skokie in Count I, it cannot use HOLA as a basis for a cause of action against Fanslow and CCC.

█ The claim in Count I against Skokie, as well as Fanslow and CCC, must be dismissed. The Act does not prohibit or even mention "dishonest practices". The closest the statute comes to regulating any "dishonest practice" is in subsections (d)(2)(a) and (d)(3), which concern the authority of the Board to issue cease and desist orders against savings and loans which engage in any "unsafe or unsound practice in conducting the business of such association."

These sections obviously do not on their face prohibit the conduct described in the complaint.

Plaintiff seeks to avoid this problem by claiming that defendants have engaged in practices which violate several regulations promulgated pursuant to HOLA. Plaintiff, however, has failed to state a cause of action on the basis of these regulations against any of the defendants.

█ Plaintiff alleges that defendant Skokie issued commitments to make mortgage loans on the apartment buildings at future dates. For each of these commitments it charged a non-refundable fee of $2,160. The complaint further alleges that, though these fees were collected from prospective purchasers, no services were provided and plaintiff was forced to refund the commitment fees when defendants refused to do so. Plaintiff contends that this fee was part of the scheme to defraud and violates 12 C.F.R. § 545.8–2. This regulation, however, deals with initial loan charges and only limits federal savings and loan association's charges for items such as appraisals and credit reports to reasonable amounts. The commitment fee, which is specifically allowed in 12 C.F.R. §§ 563.17–3, 563.23–1(g)(4), is entirely separate and distinct from the reimbursement items covered by § 545.8–2. Consequently, plaintiff has failed to state a cause of action based on 12 C.F.R. § 545.8–2.

█ Plaintiff further alleges that each purchaser was threatened by defendants with economic loss unless the purchasers agreed to certain new contracts with Fanslow and CCC. Plaintiff contends that such action violates 12 C.F.R. § 563.35. This section, however, only prohibits certain sorts of tie-in arrangements. Specifically, it prohibits tying insurance services, building materials, construction services, legal services, services of a real estate broker and real estate management services to extensions of credit. None of these services is at issue in this case. Moreover, plaintiff has failed to explain how alleged threats of economic loss are tie-in arrangements.

Consequently, plaintiff has failed to state a cause of action based on § 563.35.

■ Finally, the complaint alleges that Fanslow threatened the purchasers by telling them that, unless they accepted this new mortgage proposal with Skokie at higher interest rates and a higher purchase price, they would lose their earnest money deposit of $18,500. It is further alleged that Fanslow would profit from the increased revenue obtained by the alleged fraud and coercion. Plaintiff claims that such actions violate 12 C.F.R. § 563.40. This section concerns restrictions on loan procurement fees, kickbacks and unearned fees. It provides that "no affiliated person ... may receive ... any fee or other compensation of any kind in connection with the procurement of a loan." The complaint does not allege that any of the defendants received a "fee or compensation" for a procurement of a loan. It only alleges that the defendants, in particular Fanslow, would receive greater profits from the increased revenue allegedly obtained through the breach of contract and fraud. Consequently, plaintiff has failed to state a cause of action based on § 563.35.[1]

### *Count II*

Plaintiff alleges that the scheme to defraud described in Count I, constitutes a "pattern of racketeering activity" that affects interstate commerce and that defendants engaged in threats and mail fraud that caused plaintiff to part with his property. Plaintiff contends that such conduct violates 18 U.S.C. §§ 1962, 1964(c), the Racketeer Influenced and Corrupt Organizations Act (RICO). Section 1964(c) provides: "Any person injured in his business or property by a violation of section 1962 ... may sue therefor ... ."

Section 1962 makes it unlawful for any person (a) to invest income derived from a

"pattern of racketeering activity" in an enterprise engaged in, or whose activities affect interstate commerce; (b) to maintain or acquire an interest, through a "pattern of racketeering activity" in an enterprise engaged in, or whose activities affect, interstate commerce; or (c) to conduct the affair of an enterprise that is engaged in or whose activities affect interstate commerce through a "pattern of racketeering activity."

Defendants contend that Count II must be dismissed because plaintiff must allege more than a violation of § 1962 to state a claim under § 1964. Defendants assert that plaintiff must also show that it was damaged in its property or business by the violation of RICO, that is by the *pattern* of racketeering, and not merely by the underlying fraud. Defendants argue that RICO does not provide a remedy for the direct victims of racketeering activity, but only to the indirect victims who must compete with enterprises engaged in racketeering activity. Plaintiff counters that since defendants engaged in a "pattern of racketeering activity" in furthering their scheme to defraud, a cause of action is stated under § 1964.

Defendants' argument necessitates a consideration of both the language and purpose of § 1964. The statutory language clearly requires that plaintiff be injured in his business or property "by a violation of section 1962," and not by a violation of state law.

■ Moreover, the purpose of § 1964(c) was not to transform state law violations into federal violations, but to prevent interference with free competition. As one court has stated:

"The principal purpose of the legislation is to strengthen the means of preventing money and power 'obtained from ... illegal endeavors' ... from being 'used to infiltrate and corrupt legitimate businesses and labor unions and to subvert and

---

1. Because this court finds that the complaint does not allege a violation of the Act, this court need not consider defendants' arguments that there is no private cause of action. There is, however, considerable authority that under circumstances like those in the instant case no private cause of action exists. *See, Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and *Goldman v. First Federal Savings & Loan Association of Wilmette,* 518 F.2d 1247, 1250 n.6 (7th Cir. 1975).

corrupt our democratic processes' so as *to interfere with free competition and to burden interstate and foreign commerce."* (Emphasis supplied.)

*United States v. Forsythe,* 429 F.Supp. 715, 720 (W.D.Pa.1977), *rev'd on other grounds,* 560 F.2d 1127 (3d Cir. 1977).[2] In short, plaintiff must allege how it was injured competitively by the RICO violation in order to state a cause of action under § 1964(c).

While this court realizes it may often be difficult to determine whether injury in business or property is caused by a RICO violation or a state law violation, § 1964 requires at a minimum that plaintiff allege how it was injured in its business or property by a § 1962 violation. If no such requirement existed, and plaintiff's position were adopted, every bad faith breach of contract or common law fraud where a plaintiff alleges that defendants used the mails would be transformed into a RICO suit. However, the purpose of the Act was to give law enforcement another tool with which to combat infiltration of legitimate businesses by racketeering influences and not to award treble damages for a breach of contract or common law fraud where the distinctive RICO violations did not contribute to plaintiff's injury. *See, United States v. Frumento,* 563 F.2d 1083, 1090 (3d Cir. 1977), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1258, 55 L.Ed.2d 776 (1978). Since plaintiff has failed to specify how the alleged RICO violations as such injured plaintiff's property or business, Count II must be dismissed.

### Counts III and IV

Plaintiff contends that even if it has failed to state a cause of action under HOLA or RICO, there are two alternative jurisdictional theories on which this court would be entitled to hear plaintiff's non-federal causes of action. First, plaintiff argues that there is federal jurisdiction because one of the defendants is a federal savings and loan. Congress, however, in 28 U.S.C. § 1349 has explicitly provided that the mere fact that a party to a lawsuit is a federal corporation cannot form a basis for federal jurisdiction. Plaintiff's second jurisdictional theory, that even if it has failed to state a cause of action, the "abhorrent and unconscionable conduct" of defendants entitles plaintiff to a federal forum is obviously without merit.

Since Counts III and IV are, for the above reasons, only cognizable under the principles of pendent jurisdiction, the dismissal of Counts I and II and the relative youth of this litigation, suggest that exercise of this discretionary form of jurisdiction would be improper. Consequently, Counts III and IV are dismissed for lack of jurisdiction. *United Mineworkers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Plaintiff has essentially alleged state and not federal claims. Plaintiff originally chose to seek relief in the Illinois state courts and may still present his claims to that state forum. For the above stated reasons, defendants' motion to dismiss the complaint is granted.

---

**2.** "State law offenses are not the gravamen of RICO offenses. RICO was not designed to punish state law violations; it was designed to punish the impact on commerce caused by conduct which meets the statute's definition of racketeering activity." *United States v. Forsythe,* 560 F.2d 1127, 1135 (3d Cir. 1977).