**In re ACTION INDUSTRIES TENDER OFFER.**

Civ. A. No. 83–0198–A.
MDL No. 544.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 19, 1983.

B.G. Stephenson (local counsel) Stephenson & Balthrop, Ltd., Fairfax, Va., Bradley G. McDonald, McDonald & Karl, Washington, D.C., for McIntire.

Richard Stull, Stull, Stull & Brody, New York City, for Najaar.

I. Stephen Rabin, Rabin & Silverman, New York City, for Rosenthal.

Janis Orfe (local counsel) John Stump, Boothe, Prichard & Dudley, Fairfax, Va., Paul Titus, Bernard D. Marcus, Titus, Marcus & Shapira, Pittsburgh, Pa., for Action Industries and all individual defendants except S. Bob Buchwach.

Bernard S. Cohen, Cohen, Annand, Dunn & Sinclair, Alexandria, Va., Michael D. Buchwach, Specter & Buchwach, Pittsburgh, Pa., for S. Bob Buchwach.

Randolph A. Sutliff, McCandlish, Lillard, Rust & Church, Fairfax, Va., for James McIntire (as defendant on Action's counterclaim).

## MEMORANDUM OPINION

### I. FACTUAL BACKGROUND

RICHARD L. WILLIAMS, District Judge.

Action Industries, Inc. ("Action") is a housewares marketing corporation organized under the laws of Pennsylvania, with its principal place of business in Pennsylvania. Its stock is traded on the American Stock Exchange. Joel Gold, Charles B. Cooper, David S. Shapira, and S. Bob Buchwach are outside directors of Action Industries. Sholom Comay, Amos Comay, and Ernest Berez are inside directors of Action Industries.

On July 16, 1982, Action's Board of Directors mailed to all common stockholders a tender offer, through which the corporation offered to buy 250,000 shares at $4.00 per share. The offer expired August 6, 1982. Action purchased 237,000 shares at the stated price.

These actions arise from damages alleged to have been suffered by former stockholders of defendant Action who sold their stock in response to Action's tender offer. Plaintiff James R. McIntire is a stockbroker who tendered shares of Action Industries at the tender offer price. The other twenty-one plaintiffs are individuals who sold their stock through and at the advice of James McIntire. The plaintiffs allege that the tender offer was made in willful, deliberate, reckless, fraudulent, and negligent violation of Section 10, Section 13(e), Section 14(e), and Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j, 78m(e), 78n(e), 78t, as well as Rule 10b–5, 17 C.F.R. § 240.10b–5, Rule 13e–4, 17 C.F.R. § 240.-13e–4, and Rule 14d, 17 C.F.R. § 240.14d–1 promulgated thereunder. In addition, they allege that the tender offer violated the Pennsylvania Securities Act of 1972, 70 P.S. § 1–101 et seq. and the common law standards of fraud, negligence, and misrepresentation. Finally, they allege that the actions of the defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. The plaintiffs seek compensatory and punitive

damages, along with treble damages under the civil RICO provisions.

This matter comes before the Court on defendants' motion for Summary Judgment. The Court will examine each issue in turn.

## II. LEGAL ANALYSIS

### A. *Violations of the Racketeer Influenced and Corrupt Organizations Act (RICO)*

RICO is primarily a criminal statute aimed at eliminating the infiltration of legitimate business enterprises by organized crime. 84 Stat. at 923 (Statement of Findings and Purpose). RICO provides criminal penalties, 18 U.S.C. § 1963, civil remedies which may be sought by the government, 18 U.S.C. § 1964(a) and (b), and a private right of action for treble damages to anyone injured "by reason of" a violation of the Act. 18 U.S.C. § 1962.

The plaintiffs charge that the defendants have violated § 1962(b) and (d) of the Act. Section 1962(b) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(d) makes it unlawful for any person to conspire with others to violate subsection (b).

 In claiming that Action itself violated RICO, the plaintiffs claim that Action is both the person involved in an enterprise's racketeering activity as well as the enterprise. According to *U.S. v. Computer Sciences Corporation,* 689 F.2d 1181, 1190 (4th Cir.1982), this is not possible. There cannot be an identity between the "person" and the "enterprise." "Enterprise" was meant to refer to a being different from, not the same as or part of, the person whose behavior the Act was designed to prohibit, and, failing that, to punish. *Id.* Therefore, Action did not violate 18 U.S.C. § 1962. However, it is still possible to al-

lege that Action is the enterprise and the inside and outside directors are the people associated with it in the conduct of racketeering activity. The Court will proceed to examine the RICO claim in this light.

RICO's civil damage remedy specifically provides that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. 18 U.S.C. § 1964(c).

Section 1962(a) makes it unlawful for any person to invest any income derived from a "pattern of racketeering activity" in the acquisition, establishment or operation of any "enterprise" engaged in interstate commerce. Section 1962(b) prohibits any person from acquiring or maintaining an interest in or control of such an enterprise "through a pattern of racketeering activity," while section 1962(c) makes it illegal for anyone employed by or associated with the enterprise to participate "in the conduct of [its] affairs through a pattern of racketeering activity." It is also unlawful for any person to conspire to violate any of these provisions. 18 U.S.C. § 1962(d). "Racketeering activity" consists of a wide range of federal and state offenses including bribery, mail fraud, and securities fraud. 18 U.S.C. § 1961(1). A "pattern" of racketeering activity requires at least two acts of racketeering activity within ten years of each other, one of which must have occurred after the effective date of the statute, October 15, 1970. 18 U.S.C. § 1961(6). Each act of criminal activity could be counted as an act of racketeering activity, even if numerous acts arise out of the same scheme. *See e.g., United States v. Weatherspoon,* 581 F.2d 595, 601–602 (7th Cir.1978) (each mailing in furtherance of a scheme to defraud counts as an act of racketeering activity).

The potential for an award of treble damages to a RICO plaintiff has led to concern over the apparent reach of the statute.

Read broadly, RICO would permit every plaintiff alleging at least two of the predicate acts listed in 18 U.S.C. § 1961 to bring a suit for treble damages. In fact, an expansive interpretation of the law would create private rights of action where none existed before. For example, at the time that RICO was enacted, no private right of action for violations of the mail fraud statute existed. *See Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, 1361 (S.D.N.Y.1983). It is hard to believe that Congress would create such a right of action for treble damages without mentioning it in the negotiations surrounding the Act. .

In particular, it is not clear whether Congress intended to establish a civil RICO remedy for an individual defrauded in the sale of securities when an effective remedy already exists under the federal securities laws. The courts have taken two approaches in limiting RICO's civil use by private plaintiffs. One group of district courts has permitted the imposition of RICO treble damages only on "entities involved with organized crime or activities within the penumbra of that phrase." *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 746–748 (N.D.Ill. 1981). *See also Waterman S.S. Corp. v. Avondale Shipyards, Inc.,* 527 F.Supp. 256, 260 (E.D.La.1981); *Noonan v. Granville-Smith,* 537 F.Supp. 23 (S.D.N.Y.1981); *Kleiner v. First National Bank,* 526 F.Supp. 1019 (N.D.Ga.1981); *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109 (S.D.N.Y.1975). A second group has defined narrowly the type of injury protected by the Act. These courts have limited standing to sue to plaintiffs alleging something more than a violation of the predicate acts that constitute racketeering. *See Bankers Trust Company v. Feldesman, et al.,* 566 F.Supp. 1235 (S.D. N.Y.1983); *Mauriber v. Shearson American Express, Inc.,* 546 F.Supp. 391, 396 (S.D.N. Y.1982); *Harper v. New Japan Securities Internat'l, Inc.,* 545 F.Supp. 1002, 1006 (C.D. Ca.1982); *Van Schaick v. Church of Scientology, Inc.,* 535 F.Supp. 1125 (D.Mass. 1982); .*Landmark Savings & Loan v. Rhoades,* 527 F.Supp. 206 (E.D.Mich.1981);

*North Barrington Development, Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980).

■ This Court agrees that Congress did not intend for RICO to be used by private plaintiffs to claim treble damages for ordinary violations of criminal and tort laws. The fact that the statute specifically requires a violation of Section 1962 and not just a violation of two or more predicate acts (listed in Section 1961) demonstrates that alleging predicate acts alone is not sufficient to maintain a civil RICO claim. The Supreme Court opinion in *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981), buttresses this conclusion by making it clear that the enterprise requirement found in Section 1962 must be proven in addition to proving the predicate acts stated in Section 1961. This Court will examine each of the aforementioned interpretations of Section 1962 in turn.

### 1. *RICO and Organized Crime*

■ It is clear that Congress' primary purpose in enacting RICO was to curb the infiltration of organized crime into legitimate businesses. *United States v. Turkette, supra* at 592, 101 S.Ct. at 2533. The object was to provide "enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Congressional Statement of Findings and Purposes, Pub.L. No. 91–452, § 1, 84 Stat. 922, 923. However, the framers of the statute explicitly rejected restricting the Act's application to members of organized crime. Nowhere in the Act does Congress attempt to define "organized crime" for several reasons. First, it is difficult, if not impossible, to precisely set parameters around the term. Second, Congress feared that defining the term in the Act would make conviction depend on a "status", thus making the law unconstitutional. Finally, Congress believed that investigative techniques would be crippled if a general showing that organized crime was involved was required prior to use of those official processes. Cong.Rec. 35344 (October 7, 1970). It is clear that in criminal cases the

prosecution need not prove a defendant's involvement in organized crime in order to impose RICO penalties. *See United States v. Bledsoe,* 674 F.2d 647, 663 (8th Cir.1982); *United States v. Aleman,* 609 F.2d 298, 303–304 (7th Cir.1979) *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Campanale,* 518 F.2d 352, 363–365 (9th Cir.1975), *cert. denied sub nom. Mathews v. United States,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *Parnes v. Heinold Commodities, Inc.,* 487 F.Supp. 645 (N.D.Ill.1980); *Farmers Bank v. Bell Mortgage Corp.,* 452 F.Supp. 1278 (D.Del.1978); *United States v. Mandel,* 415 F.Supp. 997, 1018–1019 (D.Md.1976).

As a result, this Court believes that RICO does not require that a connection between the defendant and organized crime must be alleged in order to maintain a civil RICO claim for treble damages.

### 2. *Standing under RICO*

■ Section 1964(c) confers standing to bring a civil action in a limited group of cases. *See Van Schaick v. Church of Scientology, supra* at 1136. While civil RICO penalties are not limited to those cases in which a connection with organized crime is alleged, they are restricted to those cases in which the private plaintiff has asserted an injury to his business or property "by reason of a violation of section 1962." 18 U.S.C. § 1964. The legislative history and language of RICO indicate a similarity between RICO and the federal antitrust laws. *See Bankers Trust Company v. Feldesman, supra* at 1241; *Harper v. New Japan Securities Internat'l, Inc., supra* at 1006; *Van Schaick v. Church of Scientology, Inc., supra* at 1137; *Landmark Savings & Loan v. Rhoades, supra* at 208; *North Barrington Development, Inc. v. Fanslow, supra* at 210. RICO was originally conceived as a supplement to the antitrust laws. *Harper, supra* at 1004. RICO's civil remedy was modelled after the relief found in antitrust statutes. In fact, the language of 18 U.S.C. § 1964(c) and § 4 of the Clayton Act, 15 U.S.C. § 15, are nearly identical. Consequently, courts have adopted interpretations of the wording of the Clayton Act to RICO cases. In so doing, several courts relied on the Supreme Court's explanation of the type of injury required in an antitrust case in order to maintain a cause of action for treble damages. *See e.g., Van Schaick v. Church of Scientology, supra* at 1136; *Landmark Savings & Loan v. Rhoades, supra* at 208.

[F]or plaintiffs to recover treble damages on account § 7 violations, they must prove more than injury causally linked to an alleged presence in the market. Plaintiffs must prove *anti-trust* injury, which is to say injury of the type the anti-trust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anti-competitive effect either of the violation or of anti-competitive acts made possible by the violation. It should, in short, be the type of loss that the claimed violations ... would be likely to cause. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Therefore, in order to allege a civil cause of action under RICO, a plaintiff must have suffered the type of injury that RICO was designed to prevent.

There is no set definition for the type of injury for which RICO provides a civil remedy. Some courts have required that a plaintiff must allege that he has suffered a "racketeering enterprise injury." *Harper v. New Japan Securities Internat'l, Inc., supra* at 1007; *Landmark Savings & Loan v. Rhoades, supra* at 209. According to the court in *Landmark,*

A "racketeering enterprise injury" might occur, for example, if a civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise. 527 F.Supp. at 209.

Other courts have carried the antitrust line of reasoning further and determined that Section 1964's requirement of an injury to business or property refers to a "commercial" injury in the RICO context. These courts insist that the similarity in wording between RICO and the Clayton Act along

with the statute's primary purpose of protecting legitimate businesses from infiltration by racketeers leads to a conclusion that Section 1964(c) should be confined to business loss only. *Van Schaick v. Church of Scientology, supra* at 1137; *Johnsen v. Rogers,* 551 F.Supp. 281, 285 (C.D.Ca.1982). Finally, some courts have restricted the ambit of civil RICO even further by mandating that the same type of injury to competition required by the Clayton Act is required by RICO in order to recover treble damages. *Bankers Trust Company v. Feldesman, supra* at 1241; *North Barrington Development, Inc. v. Fanslow, supra* at 211.

The extent to which federal antitrust laws should guide courts in interpreting RICO has not been established. It is clear that RICO was intended to combat racketeering influences in the free market system, at least in part. *See United States v. Turkette, supra* 452 U.S. at 591–593 and nn. 13 and 14, 101 S.Ct. at 2532–33 and nn. 13 and 14; *Bennett v. Berg,* 685 F.2d 1053, 1059 (8th Cir.1982). However, RICO is not a part of the antitrust laws. Different policies underlie the two areas. The antitrust laws were designed to avoid concentration in industry. In contrast, RICO was enacted to "provide us with new tools to prevent organized crime from taking over legitimate businesses and activities." S.Rep. No. 91–617, p. 76 (1969) (Remarks of Sen. Kennedy). RICO borrowed the tools of antitrust law to fight corruption in general—not just to fight that corruption which leads to a lessening of competition. RICO should not be read so narrowly as to relegate the Act to the status of an amendment to the antitrust laws.

However, just as the antitrust laws require a special "anti-trust" injury, *Brunswick Corp. v. Pueblo Bowl-O-Mat, supra,* RICO requires an injury unique to that Act. There is no evidence that Congress meant to pre-empt existing remedies or to provide cumulative remedies for the crimes listed in Section 1961(1). *See Johnsen v. Rogers, supra* at 286; *Harper v. New Japan Securities Internat'l Inc., supra* at 1006; *Van Schaick v. Church of Scientology, supra* at 1137; *Moss v. Morgan Stanley Inc., supra* at

1361; *Adair v. Hunt Internat'l Resources Corp., supra* at 747; *North Barrington Development, Inc. v. Fanslow, supra* at 210. Instead, Congress intended to provide a treble damages remedy to those plaintiffs who could allege and prove an injury resulting from a pattern of racketeering and corruption—not simply from a predicate act for which the plaintiff could be fully compensated under a federal or state law. Section 1964(c) compensates plaintiffs suffering from a racketeering injury—not just from a predicate act in which there is no racketeering involvement.

■ Standing to sue for treble damages under RICO in the instant case relies solely on allegations by the plaintiffs that the defendant committed predicate acts listed in Section 1961(1). No claim of the existence of a racketeering enterprise is made. These allegations are not sufficient to establish standing for purposes of 18 U.S.C. § 1964(c). Accordingly, the defendants' motion to dismiss the civil RICO claim is GRANTED.

### B. Violations of the Securities Exchange Act of 1934, Pennsylvania Securities Act of 1972, and Common Law Standards of Fraud, Negligence and Misrepresentation.

#### 1. The Outside Directors

■ Directors may be primarily or secondarily liable under 10(b) of the Securities Exchange Act of 1934. For a director to be primarily liable, the same elements as for corporate liability must be established—a duty to disclose, materiality of the information, scienter, causation, and reliance. *See e.g. Beissinger v. Rockwood Computer Corp.,* 529 F.Supp. 770 (E.D.Pa. 1981). The affidavits compiled in the present action demonstrate that these elements do not exist in the instant action. Outside directors do not have a common law duty to insure that all material, adverse information be passed on to stockholders, nor do they have such a duty under the 1934 Securities Exchange Act. *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1291, 1293–

1309 (2d Cir.1973). As a result, it is very difficult to allege that the outside directors are primarily liable. In the instant case, the outside directors may not have had a duty to disclose omissions had they known of them. In addition, the evidence demonstrates that the outside directors did not have knowledge of any misstatements or omissions. They did not draft the tender offer, nor did they receive any of Action's internal projections. Two of them tendered shares in response to the tender offer. There is absolutely no evidence that any of the outside directors acted with the scienter required by the 1934 Act in order to establish primary liability.

■■■ Outside directors may be secondarily liable under section 10(b) as aiders and abettors. *See Carpenter v. Harris, Upham & Co., Inc.,* 594 F.2d 388, 396 (4th Cir.1979), *cert. denied sub nom. Carpenter v. Edwards and Warren,* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). To establish the liability of a defendant as an aider and abettor of a 10(b) violation, the plaintiff must prove: (1) the commission of a violation of § 10(b) or rule 10b–5 by the primary party; (2) the defendant's general awareness that his role was part of an over all activity that is improper; and (3) knowing and substantial assistance of the primary violation by the defendant. *See Cleary v. Perfectune, Inc.,* 700 F.2d 774, 777 (1st Cir.1983); *Harmsen v. Smith,* 693 F.2d 932, 943 (9th Cir.1982); *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980); *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 94–97 (5th Cir.1975). Under this three prong test, the outside directors in the present action are free from aider/abettor liability. There is no evidence that the outside directors had any awareness of improper activity nor is there any evidence that the outside directors knowingly advanced the alleged primary violation.

■■■ Finally, Section 20(a), 15 U.S.C. § 78t(a) provides for the liability of a "controlling person" for the misdeeds of those acting at the direction of the controlling person. It states in part that:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

The outside directors are not liable under section 20(a). There is no evidence in this case that they directed or controlled anyone in the issuance of the tender offer. At most, each gave their cursory approval of the offer. In addition, there is no evidence that the outside directors knew that the tender offer contained any securities violations. Since section 20(a) requires "something more than negligence," *Carpenter v. Harris, Upham & Co., Inc., supra* at 394, it cannot be said that the outside directors are liable under section 20(a) without some facts indicating knowledge on their part.

There is no theory of the plaintiffs' case under which the outside directors may be held liable to the plaintiffs. Consequently, the motion for Summary Judgment with respect to the outside directors is GRANTED and the case against them is DISMISSED.

### 2. *Action Industries and the Inside Directors*

Defendants' motion for Summary Judgment with respect to Action Industries and the inside directors is DENIED on the grounds that there are too many material issues of fact still in dispute.

### C. *Punitive Damages for Violations of the Securities Exchange Act of 1934, Pennsylvania Securities Act of 1972, and the Common Law Standards of Fraud, Negligence, and Misrepresentation*

■■■ There is no right to punitive damages in Securities Exchange Act cases. *Carras v. Burns,* 516 F.2d 251, 259 (4th Cir.1975). The Pennsylvania statute contains language identical to that found in

the federal Securities Exchange Act. In addition, the Act specifically defines the damages available to a seller of a security injured by a violation of the Act in terms of actual—not punitive—damages only. Consequently, the defendants' motion for Summary Judgment with respect to the punitive damages claims under the federal and Pennsylvania securities laws is GRANTED.

With respect to the punitive damages claimed under the pendent common law claims, Summary Judgment is DENIED on the grounds that material issues of fact related to the proof of the elements required in order to obtain punitive damages are in dispute.