**ECONO–CAR INTERNATIONAL, INC., Plaintiff,**

v.

**AGENCY RENT–A–CAR, INC., Samuel J. Frankino, and Russell A. Smith, Defendants.**

Civ. A. No. 83–2597–MA.

United States District Court, D. Massachusetts.

June 14, 1984.

ants' motion to dismiss the plaintiff's amended complaint.

The allegations of the plaintiff's amended complaint, which, for the purposes of this motion, I take as true, are complicated and, therefore, require a more detailed description. The amended complaint alleges as follows: Beginning in late 1979, the defendant Agency began purchasing stock of Gateway Industries, Inc. (Gateway). In connection with these purchases, Agency filed with the Securities and Exchange Commission a Schedule 13D and a number of amendments to that schedule. On those forms, Agency stated that its intention in purchasing Gateway stock was to make an investment. In fact, according to the plaintiff, Agency actually intended to force Gateway to repurchase its own stock at a profit to Agency.

Four to five months later, in April and May, 1980, Agency was negotiating with Gelco Corporation (Gelco), seeking to purchase Econo-Car International, Inc. (Econo-Car I) from Gelco. Econo-Car I was, apparently, a wholly-owned subsidiary of Gelco. During the time that Agency was negotiating with Gelco, Agency owned stock in Gateway. Agency's earlier purchases of Gateway stock had driven up the price of Gateway stock; hence, when Agency was negotiating with Gelco, Agency's assets included Gateway stock whose value was inflated because of Agency's purchases. Agency's ownership of this stock made it easier for Agency to finance the acquisition of Econo-Car I from Gelco, according to the plaintiff.

On May 2, 1980, all of the capital stock of Econo-Car I was sold by Gelco to a wholly-owned subsidiary of Agency. This wholly-owned subsidiary then merged with Econo-Car I, and the resulting entity was also called Econo-Car International, Inc. (Econo-Car II). Agency thus became the owner of Econo-Car II. Frankino, Agency's Chairman, became Chairman of Econo-Car II. Smith, Agency's President, became the president of Econo-Car II.

By the end of May, 1980, the month that Agency bought Econo-Car II, Agency de-

Ronald H. Rappaport, and Joel A. Kozol, Friedman & Atherton, Boston, Mass., for plaintiff.

Lawrence M. Johnson, Boston, Mass., Bruce O. Baumgartner and John M. Gherlein, Baker & Hostetler, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This action is brought under the treble damages provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, more commonly known as the RICO statute. The plaintiff, Econo-Car International, Inc. (Econo-Car), claims that certain actions of the defendants, Agency Rent-A-Car, Inc. (Agency), Agency's Chairman, Samuel J. Frankino (Frankino), and its President, Russell A. Smith (Smith), taken between December, 1979 and November, 1980, violated RICO and caused damage to Econo-Car. The matter is before the Court on the defend-

cided to sell it. During the time that Econo-Car II was owned by Agency, however, Econo-Car II made a number of misrepresentations about the experience and intentions of its new management to its licensees, the plaintiff claims. While these misrepresentations were being made, Agency was negotiating with Ragatwo, Inc. (Ragatwo), seeking to sell Econo-Car II to Ragatwo. During Agency's negotiations with Ragatwo, Agency made a series of misrepresentations concerning the business prospects and financial health of Econo-Car II. Agency also neglected to inform Ragatwo that Econo-Car II was in the process of making a number of misrepresentations to its licensees, the plaintiff alleges.

On September 2, 1980, all of Econo-Car II's capital stock was sold by Agency to what was apparently a wholly-owned subsidiary of Ragatwo, Eco-Car, Inc. Although the exact nature of the corporate metamorphosis is unclear from the amended complaint, Ragatwo, Eco-Car, Inc. and Econo-Car II soon became one company, Econo-Car International, Inc., the current plaintiff, to which I refer, for convenience, simply as Econo-Car.

After the sale, the plaintiff alleges, Smith sent a letter demanding that the National Bank of Canada pay to Agency sums due to Econo-Car II (since merged, of course, into Econo-Car) from Econo-Car's Canadian distributor. Finally, to complete the circle, the plaintiff alleges that in February, 1981 Agency sold back to Gateway for $6 million stock it had purchased from Gateway for $4 million.

Those are the plaintiff's factual allegations. In order to understand how the plaintiff claims that the defendant's alleged actions violated RICO, it is necessary to examine the provisions of that statute.

RICO was enacted as part of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 941. Its primary purpose, the Supreme Court has held, is to "cope with the infiltration of legitimate businesses" by organized crime. *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981). At RICO's

heart is 18 U.S.C. § 1962, which outlaws four kinds of activities. Section 1962(a) prohibits the investment of income derived from "a pattern of racketeering activity" in any enterprise whose activities affect interstate commerce. It provides, in part, as follows:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(b) prohibits the use of racketeering tactics to acquire or maintain control in an enterprise. It provides that:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(c) is aimed at persons who are employed or associated with an interstate enterprise. It prohibits such persons from participating in the conduct of an enterprise through a pattern of racketeering activity. In the words of the statute:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.

Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(a)–(c).

RICO prohibits each of these forms of conduct only when they are done through or from a "pattern of racketeering activity." Section 1961(1) defines "racketeering activity." Under that subsection, racketeering activity includes any act constituting one or more of a number of state crimes, including murder, kidnapping, and arson; and any act which is indictable under a number of provisions of the federal criminal code. Mail fraud, 18 U.S.C. § 1341, is a racketeering activity. So is wire fraud, 18 U.S.C. § 1341. The statute also includes within the definition of racketeering activity "any offense involving fraud ... in the sale of securities."

Section 1961(5) defines the term "pattern of racketeering activity." This subsection provides that a

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

In sum, then, any two acts of mail fraud committed within a ten year period constitute a pattern of racketeering activity, as does a single act of mail fraud and a single act of securities fraud within the same time span. In RICO's special parlance, each of these particular crimes is known as a "predicate offense."

RICO provides for both criminal and civil enforcement. The criminal penalties are harsh. *See* 18 U.S.C. § 1963. Section 1964(c) creates the civil remedy, stating that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

In this case, Econo-Car claims that it was injured by reason of Agency's, Frankino's and Smith's violations of § 1962. It also claims, as it must to state a cause of action under RICO, *see Spencer Companies, Inc. v. Agency Rent-A-Car, Inc.*, Fed.Sec.L. Rep. (CCH) 98,361 (D.Mass.1981), that the defendants committed a number of racketeering acts. Specifically, the plaintiff alleges that the defendants committed several separate acts of securities fraud in connection with the filing of Schedules 13D and amendments thereto; that the defendants committed at least four separate acts of mail fraud in connection with fraudulent statements mailed to Econo-Car licensees; and that the defendants committed numerous acts of mail fraud, wire fraud, and securities fraud in connection with Agency's sale of Econo-Car II. There are more allegations of racketeering acts in the amended complaint; this is just a sample.

The plaintiff argues that the defendants have violated each of the subsections of § 1962. The plaintiff says that the defendants violated § 1962(a) and (b) by their actions in the Gateway transaction, in which Agency allegedly filed false statements concerning its reasons for purchasing Gateway stock. Specifically, the plaintiff contends that Agency used the appreciated value of the Gateway stock it owned (which it had allegedly committed securities fraud in acquiring) to obtain the financing necessary for the acquisition of Econo-Car I. Thus, the plaintiff claims, the defendants violated § 1962(a) because it invested "indirect income"—the proceeds of the financing, acquired through a pattern of racketeering activity—into an interstate enterprise, namely Econo-Car I. The plaintiff alleges that the same facts also constitute a violation of § 1962(b), because Agency acquired, at least indirectly, its control of Econo-Car I through a pattern of racketeering activity.

The plaintiff also claims that the defendants violated § 1962(c), the subsection which forbids a person employed by or associated with an enterprise to conduct the affairs of that enterprise, or participate in the conduct of that enterprise's affairs, through a pattern of racketeering activity. The plaintiff claims that Agency, Frankino,

and Smith, persons employed by or associated with Econo-Car II, participated in the conduct of Econo-Car II's affairs through a pattern of racketeering activity. In particular, the company and the two individuals participated in Econo-Car II's affairs through acts of mail fraud and wire fraud, directed toward Econo-Car's franchisees and toward Ragatwo, its ultimate purchaser. Finally, the plaintiff alleges that the defendants violated § 1962(d) by conspiring to violate § 1962(a)–(c).

The defendants make a number of arguments in support of their motion to dismiss the plaintiff's amended complaint. They argue that the plaintiff's claim that the defendants committed fraud in the sale of securities when it sold all of the stock of Econo-Car II to Ragatwo must be dismissed, because a sale of all of a company's stock is not a sale of securities within the meaning of the federal securities laws. They also argue that violations of section 13(d) of the Securities Exchange Act of 1934 are not predicate offenses under RICO, because Section 13(d) is not an anti-fraud provision and, therefore, violations of that section do not constitute *fraud* in the sale of securities. The defendants also argue that the plaintiffs have failed to plead that they suffered a "racketeering enterprise injury"—that is, the defendants say that the plaintiff has failed to plead that it was injured "by reason of a violation of § 1962," rather than simply suffering injury because of particular predicate offenses.

I do not reach the defendants' first two arguments. I rule that the defendants' contention that the plaintiff has failed to allege injury by reason of § 1962 is correct, as applied to the plaintiff's allegations concerning the Gateway transaction. However, in my judgment, the plaintiff has stated a cause of action under RICO inso-far as it claims that the defendants violated § 1962(c) and (d) by participating in the conduct of Agency's affairs through a pattern of racketeering activity. My reasons for these rulings are as follows.

(1) *The Gateway Transaction.*

■ The plaintiff has alleged that the defendants' actions in purchasing Gateway stock, and filing allegedly false Schedules 13d and amendments in connection with those purchases, violates § 1962(a) and § 1962(b). I assume, *arguendo*, that the defendants' actions in the Gateway transaction violated § 1962(a) and § 1962(b).[1] But, even assuming that the defendants violated § 1962, that is not enough. To recover under § 1964(c), the plaintiff must show that it suffered injury *by reason of* a violation of § 1962. In my view, Econo-Car cannot claim that it was injured by reason of Agency's *purchase* of Econo-Car I. Had Agency violated § 1962(a) and § 1962(b) in purchasing Econo-Car I, then operated Econo-Car II honestly, and sold it to Ragatwo without fraud or deception, the plaintiff would have no cause to complain. It is what the defendants allegedly did to Econo-Car II when Agency owned it, and what it said (or didn't say) to Ragatwo about Econo-Car II during the negotiations leading to the sale to Ragatwo, that gives the plaintiff cause to complain. The fact that Agency came to own Econo-Car II does not. I recognize that questions of causation are typically reserved for the jury. But, under the circumstances, I conclude that no reasonable juror could find that Agency's acquisition of Econo-Car I, rather than its operation and sale of Econo-Car II, caused any injury that the plaintiff may have suffered. *See Restatement* (Second) of Torts § 434(1)(a) (1965). Consequently, I rule that so much of the plaintiff's amended complaint as charges the defendants with violating § 1962(a) and

---

1. I recognize, however, that this assumption is probably improbable, especially with respect to the claim that the defendants violated § 1962(a), which prohibits the direct or indirect investment of *income,* derived from racketeering activity, in an enterprise affecting interstate commerce. Whatever advantage Agency's ownership of Gateway stock may have given it in obtaining the financing necessary to purchase Econo-Car I, the ownership of that stock did not generate income, as that word is usually understood, until it was sold back to Gateway in February, 1981. Therefore, I find it doubtful that agency can be said to have invested "racketeering income" in Econo-Car I.

§ 1962(b) in connection with the Gateway transaction must be dismissed for failure to state a claim upon which relief can be granted.

(2) *Alleged Violations of § 1962(c).*

The defendants argue that the plaintiff's claim that Agency, Frankino and Smith violated § 1962(c) by operating Econo-Car II through a pattern of racketeering activity must also be dismissed. The defendants contend that the amended complaint does not state a cause of action because it does not allege that the plaintiff was a victim of a "racketeering enterprise injury." According to the defendants, a RICO complaint fails to state a cause of action unless it alleges injury above and beyond the injury suffered by virtue of the defendants' commission of predicate acts of racketeering. The "something more" that the plaintiff must plead is "racketeering enterprise injury." In arguing that a RICO plaintiff must prove that it has suffered this special kind of injury, the defendant relies, *inter alia*, on *Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206, 208–09 (E.D. Mich.1981), which held that:

> [S]omething more or different than injury from predicate acts is required for a plaintiff to have standing to recover treble damages under the RICO statute... What is required for standing to bring a civil RICO damage action is an allegation that the plaintiff has suffered a racketeering enterprise injury.... A racketeering enterprise injury might occur, for example, if a civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise.

A number of courts have adopted the requirement that a RICO plaintiff plead a racketeering enterprise injury. *See, e.g., Sedima S.P.R.L. v. Imrex Co., Inc.*, 574 F.Supp. 963 (E.D.N.Y.1983); *In re Action Industries Tender Offer*, 572 F.Supp. 846 (E.D.Va.1983); *Friedlander v. Nims*, 571 F.Supp. 1188 (N.D.Ga.1983); *Harper v. New Japan Securities International, Inc.*, 545 F.Supp. 1002 (C.D.Cal.1982). A roughly equal number of courts have rejected the requirement that there be some showing of special racketeering enterprise injury before the plaintiff can recover under § 1962(c). *See, e.g., Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648 (7th Cir.1984); *Bennett v. Berg*, 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 527, (1983), *affirming,* 685 F.2d 1053 (8th Cir.1982); *In re Longhorn Securities Litigation*, 573 F.Supp. 255 (W.D.Ok.1983); *Crocker National Bank v. Rockwell International Corp.*, 555 F.Supp. 47 (N.D.Cal.1982).[2]

Those courts that have accepted the racketeering enterprise injury requirement have done so chiefly for two reasons. Some courts have found that Congress, in requiring that a civil RICO plaintiff prove injury "by reason of § 1962," explicitly used language nearly identical to the language found in § 4 of the Clayton Act. Since the Supreme Court has interpreted the "by reason of" requirement of § 4 of the Clayton Act to require that a plaintiff prove *anti-trust* injury, not just "general" damage, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.* 429 U.S. 477, 488–89, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977), these courts have held that RICO's remedies should similarly be restricted to a special kind of injury, *racketeering enterprise injury. See, e.g., Harper v. New Japan Securities International, Inc.*, 545 F.Supp. at 1007. Other courts have restricted RICO's scope to plaintiffs who allege racketeering enterprise injury on the basis of the legislative history, which, those courts have held, indicate that Congress did not

---

**2.** The issue has never been directly decided in this District. In *Van Schaik v. Church of Scientology*, 535 F.Supp. 1125 (D.Mass.1982), the court held that § 1964(c) created a remedy only for persons injured in a business, as opposed to a personal, capacity. *Id.* at 1137. The court suggested, in *dicta* contained in a footnote, that § 1964(c) requires "in part" a racketeering enterprise injury, but did not described that kind of injury. *Id.* n. 11. In *Spencer Companies, Inc. v. Agency Rent-A-Car, Inc.*, Fed.Sec.L.Rep. (CCH) 98,361 (D.Mass.1981), the court never reached the question presented here.

intend to create a new set of remedies for actions which had previously been the province of state tort or federal securities law. *See, e.g., Richardson v. Shearson American Express Co., Inc.,* 573 F.Supp. 133, 137 (S.D.N.Y.1983).

In deciding whether a RICO plaintiff must allege special, racketeering enterprise injury, I bear in mind certain well-established principles of statutory construction which the Supreme Court has held, both generally and with specific reference to RICO, should guide courts' interpretation of federal statutes. As the Court held in *United States v. Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527:

> In determining the scope of a statute, [courts should] look first to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766] (1980).

Thus, I look first to the language and structure of the RICO statute to see whether it provides support for a racketeering enterprise injury requirement.

The language of the statute provides no support for the view that a plaintiff must allege "racketeering enterprise injury." RICO is not easy to read—as one court has noted, it appears to be "... constructed on the model of a treasure hunt." *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d at 652. But the language and structure of the statute spell out clearly the elements of a RICO cause of action. The plaintiff must show, first, that the defendants have committed two or more racketeering acts as defined in § 1961(1). Such a showing is proof that the defendants have engaged in a pattern of racketeering activity. Next, the plaintiff must show that the defendants violated § 1962. With respect to 1962(c), the subsection at issue here, the plaintiff must show that the defendants were employed or associated with an enterprise, and conducted the affairs of that enter-

prise, or participated in the conduct of the affairs of that enterprise, through a pattern of racketeering activity. Finally, the plaintiff must show that it suffered injury "by reason of" the defendant's violation of § 1962. Section 1964(c)'s "by reason of" requirement does, of course, limit the class of persons entitled to sue under RICO. And § 1964(c) does so in a way that makes the civil remedy restrictive in comparison with the possible scope of criminal liability. For example, persons associated with an enterprise who conduct the affairs of that enterprise through a pattern of racketeering activity—mail fraud and wire fraud, for instance—would be subject to criminal penalties under RICO. But if the victim of the mail fraud and the victim of the wire fraud were two separate persons, neither would have a RICO cause of action, because neither would have been injured by reason of the defendant's violation of § 1962. To that extent, there is a "racketeering enterprise injury" requirement; a plaintiff must allege more than that it was the victim of a racketeering act done by a person who violated § 1962. The acts of the defendant which violated § 1962 must have caused the plaintiff's injury if the plaintiff is to state a cause of action under RICO. The cases that impose a "racketeering enterprise inquiry" requirement do not, however, simply mean that this kind of injury must be proved. Rather, those cases suggest that something further is required. The language of the statute does not support the view "something more" is necessary.

Analysis of the history of the statute is more complicated. Two questions need to be addressed. First, did Congress' use of language nearly identical to language in § 4 of the Clayton Act indicate that it intended to restrict the scope of RICO's remedies to special "racketeering enterprise" injuries, just as the Clayton Act's language has been held to require a showing of special "antitrust" injury? Second, apart from the question of the antitrust analogy, did Congress intend to limit RICO so as to prevent its use in "garden variety" fraud

actions? I address each of these questions in turn.

The legislative history is clear on at least one point. RICO's treble damage provision was modeled after the antitrust law's treble damage provisions. To understand fully the relationship between RICO and the antitrust law, however, it is necessary to look back to 1967, some three years before RICO was enacted, and examine the debate surrounding two bills, S. 2048, 90th Cong. 1st Sess. (1967), and S. 2049, 90th Cong. 1st Sess. (1967), introduced by Senator Hruska. Both statutes had objectives similar to those ultimately addressed by RICO. S. 2048 would have addressed these problems by amending the Sherman Act; S. 2049 proposed a separate statute prohibiting the investment of criminal funds in a business enterprise. Neither of these bills passed. The American Bar Association (ABA) did study them, though, and its study was reprinted in the Congressional Record, 115 Cong.Rec. 6994–95 (1969). The ABA study endorsed the goals of the two bills, but recommended that organized crime be attacked outside the context of the antitrust laws. In the ABA's view, amending the antitrust laws to encourage the prosecution of organized criminals raised the danger of "commingling ... criminal enforcement goals with the goals of regulating competition..." *Id.* The ABA noted that:

[I]nserting in the Sherman Act a provision which does not have as its primary objective the establishment or maintenance of free competition, may result in an undesirable blending of otherwise laudatory statutory objectives. Criminal conduct which violates existing antitrust laws can be proceeded against under those laws. Additional conduct sought to be reached should be attacked under separate legislation.

Moreover, the use of antitrust laws themselves as a vehicle for combating organized crime could create inappropriate and unnecessary obstacles in the way of persons injured by organized crime who might seek treble damage recovery. Such a private litigant would have to contend with a body of precedent—appropriate in a purely antitrust context—setting strict requirements on questions such as 'standing to sue' and 'proximate cause.'

*Id.* As noted above, no action was taken on these two bills.

RICO's direct predecessor was first introduced as S. 1861, the Corrupt Organizations Act, on April 18, 1969. 115 Cong.Rec. 9567 (1969). The Act originally contained no provision for private civil remedies. S. 1861 was shortly thereafter given its present name, and incorporated into S. 30, the Organized Crime Control Act, which passed the Senate on January 23, 1970. 116 Cong.Rec. 972 (1970). As passed by the Senate, the bill still did not contain provisions for private remedies. The treble damage provision was added in the House, at the suggestion of the ABA. The ABA's president-elect, Edward L. Wright, testified that:

In the portion seeking to add a proposed Section 1964, "Civil Remedies," we would recommend an amendment to include the additional civil remedy of authorizing private damage suits based upon the concept of Section 4 of the Clayton Act. Section 4 provides as follows:

Suits by persons injured; amount of recovery.—Any person who shall be injured in his business or property by reasons of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount of controversy, and shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee.

*Organized Crime Control,* Hearings on S. 30 and Related Proposals Before Subcommn. No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess., 538, 543–44 (1970). On September 30, 1970, when S. 30 was reported favorably from the House Judiciary Committee, it contained a civil remedy provision, the current

§ 1964(c). H.R.Rep. No. 1549, 91st Cong., 2d Sess. 58, *reprinted in* 1970 U.S.Code Cong. & Ad.News, 4007, 4034. The debate in the House on the bill contained references to the antitrust laws. Congressman Poff, for example, noted that RICO "represents, in large measure, an adaption of the machinery used in the antitrust field to redress violations of the Sherman Act and other antitrust legislation." 116 Cong.Rec. 35,295 (1970). As amended, the bill passed the House, *id.,* at 35,363, and the House-amended bill passed the Senate on a voice vote. *Id.* at 36,296.

The legislative history has led different courts and commentators to different conclusions on the question whether Congress intended to incorporate the special standing provisions of the antitrust laws into the RICO treble damage provision. *Compare, e.g., Blakey,* "The RICO Civil Fraud Action in Context: Reflections on *Bennet v. Berg,*" 58 Notre Dame Law, 237, 280 (1982) (The legislative history demonstrates "beyond serious doubt" that "Congress deliberately redrafted RICO outside of the antitrust statutes, so that it would *not* be limited by antitrust concepts like 'competitive,' 'commercial,' or 'direct or indirect' injury") with *Bridges,* "RICO Litigation Based upon Fraud in the Sale of Securities," 18 Ga.L.Rev. 43, 69 (1983) (bond between RICO and antitrust remedies fundamental and broad). My own reading of the legislative history suggests little more than that Congress had in mind the general outlines of the antitrust treble damage remedies when it enacted § 1964(c), borrowed those general outlines, and did so at least in part because it viewed organized crime, like monopolists, as a threat to the American economy. Other than the ABA report of 1967, the question of special standing or injury requirements seems never to have come up. In my view, then, the legislative history sheds little light on the question whether a special standing requirement should be read into RICO.

■ In searching for the meaning of a statute, courts should, however, consider in addition to the language of the statute and its legislative history, the purposes it was meant to serve and the problems it was meant to remedy. *See, e.g., Bob Jones University v. United States,* 461 U.S. 574, 103 S.Ct. 2017, 2024, 76 L.Ed.2d 157 (1983). Here, it is helpful to consider the policy objectives that led courts to conclude that Congress intended that there be special standing requirements in the antitrust context. In the antitrust field, special standing requirements reflect a concern that the overuse of the treble damage provisions "... could eliminate defendants from the marketplace, reduce competition, and thus defeat the objectives of the antitrust statutes." *Note,* "Civil RICO: The Temptation and Impropriety of Judicial Restriction," 95 Harv.L.Rev. 1080, 1113, *citing* L. Sullivan, *Handbook of Antitrust Law,* § 244 (1972). Congress, in enacting RICO's treble damage provision, showed no similar fear of the possibility of eliminating persons who violate § 1962 from the economy. Rather,

> RICO has the opposite purpose. It is primarily designed to *ruin* those individuals and enterprises it is aimed at. It is not designed to increase their efficiency or protect them from insolvency. Thus, the rationale behind the antitrust standing concerns have no applicability here.

*Ralston v. Capper,* 569 F.2d 1575, 1580 (E.D.Mich.1983). In sum, then, consideration of the legislative history of the statute and its purpose leads me to conclude RICO's reach should be limited by analogy to the antitrust laws.

■ The question remains whether, apart from antitrust concerns, Congress' intent in enacting RICO is best effected by requiring RICO's plaintiffs to allege some special kind of racketeering enterprise injury. Having reviewed the language of the statute and its legislative history, I must conclude that imposing such a restriction on RICO plaintiffs would not fulfill Congress' intent.

The courts that have imposed a requirement that plaintiffs show special racketeering enterprise injury have generally done so without explaining precisely what such a showing would entail. It may, as one court

has held, require that a plaintiff show that a "civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise." *Landmark Savings & Loan v. Rhoades,* 527 F.Supp. at 208–09. The common thread among the decisions requiring a civil RICO plaintiff to show racketeering enterprise injury is the view that "... something more or different than injury that would result from the predicate acts must be shown by the plaintiff." *Sedima S.P.R.L. v. Imrex Co., Inc.,* 574 F.Supp. at 965.

I note, first, that § 1964(c) creates a remedy for violations of all the subsections of § 1962, not just for violations of § 1962(a) and (b), the subsections directly addressing the problem of the infiltration of legitimate business by organized crime. In enacting § 1962(c) Congress apparently concluded that persons who conduct the affairs of an enterprise through a pattern of racketeering activity create victims. It gave a cause of action to those victims. Preventing the most direct victims of the violations of § 1962(c), those persons who suffer direct injury from another person's conduct of an enterprise through a pattern of racketeering activity, would seem to undermine Congress' purpose in including § 1962(c) violations among those offenses that give rise to a cause of action under § 1964(c).

As the Court held in *Mauriber v. Shearson American Express Co.,* 567 F.Supp. 1231, 1240 (S.D.N.Y.1983):

A brokerage enterprise infiltrated by organized crime and engaged in defrauding its customers ... might injure no one but the customers of the enterprise. There would be no injury above and beyond that caused by the predicate acts of fraud forming the 'pattern of racketeering activity.' Such conduct, however, would violate RICO and would lie near the center of Congress' concern.

There is no doubt that RICO's civil provisions extend a treble damage remedy into areas previously the sole province of state fraud and federal securities law. But the RICO remedy is not wholly duplicative.

RICO does not simply provide an added, treble damages remedy for an injury that is already actionable. To recover under RICO a person must show injury "by a 'pattern of racketeering activity' proscribed by Section 1962, which is separate and distinct from the constituent, predicate offenses comprising such a pattern." *In re Longhorn Securities Litigation,* 573 F.Supp. at 270. Moreover, the Supreme Court held in *Turkette* that "... the language of the statute and its legislative history indicate that Congress was well aware that it was entering a new domain of federal involvement through the enactment of this measure." 452 U.S. at 586. The Court noted that Congress took this step in the face of opposition from Congressmen who objected to the statute's reach into areas traditionally the sole province of state regulation. *Id.* at 586–587, 101 S.Ct. at 2530–2531. There is no reason to believe that Congress' awareness of RICO's scope extended only to its criminal provisions, and not to its civil aspects. Indeed, Congressman Mikva, who the Supreme Court cited as an opponent of the statute on federalism grounds, also expressed concern that the treble damage section might be used inappropriately, and proposed an amendment creating penalties for malicious RICO suits. The amendment did not pass. 116 Cong.Rec. 35,332 (1970).

In sum, then, I agree with the Seventh and Eighth Circuits, and with a number of other district courts, that RICO should not be limited by the imposition of a special racketeering enterprise injury requirement. As the Seventh Circuit held in *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d at 654:

Congress deliberately cast the net of liability wide, being more concerned to avoid opening loopholes through which the minions of organized crime might crawl to freedom than to avoid making garden-variety frauds actionable in federal treble damage proceedings—the price of eliminating all possible loopholes. We must abide by Congress's decision, made at a time of less sensitivity than today to the workload pressures on

the federal courts and to the desirability of maintaining a reasonable balance between state and federal courts, however much we may regret not only the burdens that the decision has cast on the federal courts but also the deplacement of state tort law into the federal courts that it has brought about. (citations omitted).

In any event, I also note that even if such a requirement were imposed, chances are good that this case might satisfy it. Concern about the competitive advantages gained by persons who operate enterprises through racketeering tactics was near the heart of Congress' purpose in enacting RICO. The plaintiff here alleges that one rental car company bought another rental car company, wrecked it through racketeering tactics, then sold it. Although the special kind of injury required to satisfy the racketeering enterprise injury standard that some courts have imposed has never been precisely defined, the kind of injury suffered by Econo-Car may be what those courts had in mind.

To conclude, I rule that the plaintiff's allegations that the defendants violated § 1962(c) and § 1962(d) in connection with their operation of Econo-Car II and Agency's sale of Econo-Car II to Ragatwo, state a cause of action under RICO, and as to those allegations, the motion to dismiss is denied. I also rule that the plaintiff's allegation that the defendants violated § 1962(a) and (b) in connection with the Gateway transaction do not state a cause of action, and as to those allegations, the motion to dismiss is allowed. For the purposes of the trial and preparation thereof, the plaintiff will file a substitute complaint in accordance with the above.

SO ORDERED.