**LANDMARK SAVINGS & LOAN,**
**Plaintiff,**

v.

**Loeb RHOADES, Hornblower & Co. and**
**J. Gary Morgan, Defendants.**

**Civ. No. 79–72799.**

United States District Court,
E. D. Michigan, S. D.

Nov. 20, 1981.

Walter L. Baumgardner, Jr., Birmingham, Mich., Robert A. Hudson, Hoops & Hudson, Detroit, Mich., for plaintiff.

Kathleen Gallagher Lewis, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

■ As authorized by the Court, the plaintiff has filed an amended complaint for damages for violation of the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*; the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*; Rule 10b–5, 17 C.F.R. § 240.10b5 (1981); the 1970 Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.*; and certain pendent state claims.

The essential differences between the original complaint and the amended complaint are as follows:

(1) In the amended complaint the plaintiff has enumerated with some degree of specificity the allegedly false and untrue statements made by the defendants in connection with the purchase and sale of the securities at issue; and

(2) In Count IV of the amended complaint the plaintiff has attempted to state a claim for treble damages and attorney fees for violation of the 1970 Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.*, herein referred to as RICO.

The defendants' motion to dismiss portions of the complaint and certain claims was taken under advisement on oral argument.

Although the amended complaint falls short of an exemplary complaint for fraud, churning, and unsuitability, it does sufficiently inform the defendants of the claims they are called upon to defend to escape dismissal.

The motion to dismiss the RICO count is more difficult of resolution.

In its RICO count the plaintiff incorporates the previous pleaded factual allegations by reference and then sets forth allegations as follows:

"45. Acts complained of above and herein occurred by the use and means of the mails and wires of interstate commerce.

"46. Acts complained of above and herein allege fraud in the sale of securities.

"47. The acts complained of above and herein all occurred within ten (10) years of one another.

"48. Defendants received income derived, directly or indirectly, from the acts complained of above and herein.

"49. Defendants used or invested directly or indirectly, some parts of the aforesaid income, or the proceeds of such income, in the acquisition of an interest in and/or the establishment and/or operation of an enterprise or enterprises engaged in or the activities of which affect interstate commerce.

"50. The acts complained of were done in furtherance of a conspiracy.

"51. As a direct and proximate result of Defendant's complained of acts, Plaintiff suffered damages, including commissions paid, interest paid on financing transactions, and losses on the fraudulently induced transactions."

For the purposes of this opinion, the Court assumes that the allegations of the complaint, if rearranged in the traditional form of an indictment, and if supplemented by appropriate reference to specified mailings, would charge the defendants with violations of Sections 1962(a) and (d) of Title 18, United States Code.

It does not appear that an effort has even been made to charge that the plaintiff was injured in its business or property by reason of a violation of 18 U.S.C. § 1962(c). The Court draws this conclusion for the following reasons. The complaint does not distinguish between the defendants. A corporate defendant could only violate § 1962(c) by being a "person ... associated with an enterprise" with the individual defendant being the enterprise. The words "person" and "enterprise" are so broadly defined in the statute that this construction would be possible but would be strained. Furthermore, although the plaintiff borrows from the language of 1962(a) and (d), no attempt was made to borrow directly from the language of 1962(c).

■ The complaint by implication charges that the plaintiff was injured in its business or property by the acts which constitute the predicate acts of racketeering. It is the opinion of the Court, however, that something more or different than injury from predicate acts is required for a plaintiff to have standing to recover treble damages under the RICO statute.

■ The RICO statute provides that "any person injured in his business or property by reason of a violation of section 1962 ... shall recover threefold the damages he sustains ... including an attorney fee." 18 U.S.C. § 1964(c). This language is similar to the treble damage provision contained in Section 4 of the Clayton Act, 15 U.S.C. § 15. It is apparent that Congress has provided for treble damages in each Act as a means of effectuating the policy embodied in each Act.

In *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), the Supreme Court discussed the type of injury required to maintain a civil antitrust action. The Court stated:

"We therefore hold that for plaintiffs to recover treble damages on account of § 7 violations, they must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be 'the type of loss that the claimed violations ... would be likely to cause.' *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. [100] at 125 [89 S.Ct. 1562 at 1577, 23 L.Ed.2d 129]."

*Id.* at 489, 97 S.Ct. at 697. *See Chrysler Corp. v. Fedders Corp. et al.*, 643 F.2d 1229 (6th Cir. 1981).

■ The Court does not conclude that the RICO statute should be construed to require a competitive injury as that term is defined in antitrust cases. What is required for standing to bring a civil RICO damage action is an allegation that the plaintiff has suffered a "racketeering enterprise injury." Competitive injuries and racketeering en-

terprise injuries would frequently overlap, but they are not necessarily the same. A "racketeering enterprise injury" might occur, for example, if a civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise. No such thing is alleged or even suggested here. At the most, the plaintiff's fraud claims are simply that the plaintiff suffered an injury by reason of fraud in which the mails happened to be used.

 The construction given to the statute by the Court should not be considered to be a narrow or conservative construction as distinguished from a broad or liberal construction. Congress provided that the provisions of the RICO statute should be liberally construed *to effectuate its remedial purposes.* Organized Crime Control Act of Oct. 15, 1970, Pub.L. No. 91–452, Title IX, § 904, 84 Stat. 947 (1970). The victims of predicate crimes almost always have a cause of action for direct damages under federal or state law. If "organized crime" * is as harmful to our society and economy as we have all been led to believe, then the number of potential plaintiffs who are not the direct victims of predicate crimes but who have treble damage claims because they have suffered racketeering enterprise injury to their business or property are limited only by imagination and the burden of proof. Does, for example, the State of Michigan have a treble damage action against an illegal gambling enterprise because of injury to its lottery business? Does a legitimate business which loses a public bid because of a series of bribes by a competitor have a treble damage action under RICO? *See Ingram Corp. v. J. Ray McDermott & Co., Inc.,* 495 F.Supp. 1321 (E.D.La.1980).

An excellent statement of the reasons for a restrictive construction of the RICO civil action provisions appears in a comment entitled *Reading the Enterprise Element Back into RICO: Sections 1962 and 1964(c),* 76 Northwestern University Law Review 100, 125–33 (1981). For a contrary view, see Blakey & Gettings, *Racketeer Influenced & Corrupt Organizations (RICO): Basic Concepts—Criminal & Civil Remedies,* 53 Temple Law Quarterly 1009, 1040–43 (1980). *Also see Parnes v. Heinold Commodities, Inc.,* 487 F.Supp. 645 (N.D.Ill.1980).

 Whichever construction of the statute is adopted, the plaintiff could not recover for damage to his property or business in this case by reason of a violation of 18 U.S.C. § 1962(d) because of the rule that a cause of action does not exist for civil conspiracy between a corporation and its agents acting within the scope of their employment. *Nelson Radio and Supply Company v. Motorola,* 200 F.2d 911 (5th Cir. 1952); *Hodges v. Tomberlin,* 510 F.Supp. 1280, 1286 (S.D.Ga.1980). *See* 16 Am. Jur.2d, *Conspiracy* § 55 (1979). For a good discussion of the reasons for a different rule in the criminal context, see *United States v. Consolidated Coal Co.,* 424 F.Supp. 577 (S.D. Ohio 1976).

Accordingly, the motion to dismiss the RICO count will be granted. The motion to dismiss other portions of the complaint will be denied.

---

\* It is not suggested that only victims of "organized crime", as that phrase is used in the collo-

quial sense, have RICO civil claims.