**FIREMAN'S FUND INSURANCE COMPANY, Plaintiff,**

**v.**

**PLAZA OLDSMOBILE LTD., et al Defendants.**

**No. CV 83–2213.**

United States District Court, E.D. New York.

Jan. 18, 1985.

See also D.C., 596 F.Supp. 657.

Kornstein Meister & Veisz, New York City, for plaintiff.

Mendes & Mount, Linda Kupersmith, Kupersmith & Kupersmith, New York City, for defendant Hyfin Credit Union.

Suozzi, English & Cianciulli, P.C., Mineola, N.Y., for defendant A-Drive Corp.

Shapiro & Mosberg, Glen Cove, N.Y., for defendant Rodgen.

David M. Markowitz, Schwartz, Klink & Schreiber, P.C., New York City, for defendants Plaza Oldsmobile Ltd., Regency Brokerage, Inc., Rosatti and Aquilino.

Becker, Goldstein & Graff, New York City, for defendant Jordan Wolff, d/b/a Premium Specialty Sales.

David Louis Cohen, Kew Gardens, N.Y., for defendant D'Ambra.

Joseph Giannini, Brooklyn, N.Y., for defendant DiMola.

Robert Jarmel, defendant pro se.

Glabman, Rubinstein, Reingold & Rothbart, Brooklyn, N.Y., for defendant Muratore.

Charles L. Emma, Brooklyn, N.Y., for defendant Monzon.

Rappaport & Frost, New York City, for defendant Siff.

Paul S. Brenner, Office of Richard Hartman, Little Neck, N.Y., for defendants Falcone, Steven Cortapassi, d/b/a Hazard Collision, Car-Tune Collision, Critical Collision, One-Stop Collision, Clean Collision and City-Wide Collision.

WEXLER, District Judge.

## I. INTRODUCTION

In this action plaintiff contends that defendants engaged in a massive conspiracy to extract money from plaintiff by means of fraudulent automobile insurance claims. The first seven claims in the complaint are state law fraud claims, jurisdiction over which is based upon diversity of citizenship. The eighth claim is based upon the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982).[1] Plaintiff contends that defendants

---

**1.** Section 1962 reads in pertinent part:
  (c) It shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
  (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section.
  Section 1961 reads in pertinent part:
  (1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery); section 224 (relating to sports bribery), sections 471, 472 and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 2314 and 2315 (relating to interstate transportation of stolen property), sections 2341–2346 (relating to trafficking in contraband cigarettes), section 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 196 (dealing with restrictions of payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States . . . .
  (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;
  (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred

violated § 1962(c), which provides that "[i]t shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt", and violated § 1962(d) by conspiring to violate § 1962(c). "Racketeering activity" is defined to encompass a variety of acts, called "predicate acts". § 1961(1). The "racketeering activity" which plaintiff alleges took place includes mail fraud under 18 U.S.C. § 1341. *See* § 1961(1)(B). Plaintiff therefore sues for treble damages pursuant to § 1964(c).

Previously, on June 14, 1984, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, we ordered the entry of summary judgment against defendants George Siff and Steven D'Ambra, in the amount of $1,682,806.68 (three times plaintiff's claimed actual damages) plus costs and attorney fees. The time to appeal from that judgment has expired.

Plaintiff has now moved for summary judgment against defendants Cohen, Cortopassi, Jarmel, Monzon, Boutelle, and O'Mahoney (who have defaulted by not answering the complaint), and defendants Rodgen, Wolf, Muratore, and Falcone (who have appeared in this action). The motion has been stayed as against Jarmel so that he may obtain counsel, and as against Muratore because he has died. Defendant Hyfin Credit Union has moved to dismiss the RICO claim, or in the alternative to dismiss the RICO claim as against Hyfin Credit Union only. Defendant Falcone has moved to dismiss the RICO claim as against himself. Defendant Plaza Oldsmobile has moved for leave to amend its answer.

within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity; ....

Section 1964 reads in pertinent part:

(c) any person injured in his business or property by reason of a violation of section

## II. THE HYFIN MOTION

### A. ABSENCE OF TARGET ENTERPRISE

Hyfin contends that dismissal of the RICO claim is required because the alleged conspiracy did not aim at the takeover of an enterprise. However, the Supreme Court has held that a violation of § 1962(c) can be made out by knowing participation in a criminal enterprise engaging in racketeering activities, and that there is no need for a "target enterprise". *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). *But see United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.1984) (discussing extent of participation required). Hyfin's argument is therefore invalid.

### B. ABSENCE OF CONVICTION

Hyfin's motion is based in part upon the fact that neither Hyfin nor any of its directors or officers have been indicted or convicted for any crime relevant to the complaint (though several other defendants have been convicted of crimes relevant or arguably relevant to the complaint). Defendant Falcone makes a similar argument.

In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482 (2d Cir.1984), the Second Circuit stated that "a prior criminal conviction is a prerequisite to a civil RICO action." *Id.*, at 496. The Court also stated that the plaintiff in a civil RICO suit must demonstrate a special type of injury, called a "racketeering injury". *Id.* The Court affirmed a lower court decision dismissing certain civil RICO claims. Either of the Court's two statements standing alone would have been sufficient to support the affirmance of the dismissal.

For reasons set forth below, we need not address the "absence of conviction" issue.

1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

## C. RACKETEERING INJURY

Hyfin also contends that plaintiff has not properly alleged a "racketeering injury". Hyfin relies upon three Second Circuit cases issued last July.

### 1. CASE LAW

In *Sedima, supra,* at 495–96, the Court made the following statements:

> The legislative history [of RICO] suggests that it would ... be inappropriate to carry over wholesale all of the elaborate antitrust standing case law onto RICO. It would no doubt violate both the congressional purpose and common sense to require RICO plaintiffs to allege an injury of the type the *antitrust* laws were designed to prevent to maintain a RICO suit.

> On the other hand, there is nothing in the legislative history which suggests that Congress did not intend to create *analogous* standing barriers ... [I]t is reasonable to believe that Congress indicated a desire to have an analogous standing limitation imposed on RICO.

> The question then becomes what kind of injury is a "racketeering injury"? As has been said, RICO was intended to "address the infiltration of legitimate business by organized crime." *United States v. Turkette,* 452 U.S. 576, 591 [101 S.Ct. 2524, 2532, 69 L.Ed.2d 246] (1981). According to the congressional statement of findings and purpose, the Act was to seek to eradicate organized crime because "organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens" ... RICO was not enacted merely because criminals break laws, but because mobsters, either through the infiltration of legitimate enterprises or through the activities of illegitimate enterprises, cause systematic harm to competition and the market, and thereby injure investors and competitors .... It is only when injury caused by this kind of harm can be shown, therefore, that we believe that Congress intended that standing to sue civilly should be granted.

> This is, we repeat, by no means to say that standing to sue under RICO should be limited only to people who have standing to sue for a competitive injury under the antitrust laws. This is so because Congress in promulgating RICO was addressing the kind of economic injury which has an effect on competition, but nowhere suggested that actual anticompetitive effect is required for suits under the statute. For purposes of clarity, it is better to identify the RICO standing requirement as a "racketeering injury" requirement rather than a "competitive injury" requirement, as the latter term may incorrectly suggest that all of the details of the antitrust law standing requirement are being incorporated by reference. This carries with it at least, as the trial judge found, the obligation that the plaintiff show injury different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter.

The Court further stated, *id.* at 496 n. 41:

> ... claims alleging the kinds of business fraud which often affect competition should go forward under RICO even if in the particular case no harm to competition results, as, for example, when all competitors are being extorted from equally. For example, in *Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244 (S.D.N. Y.1981), a company was forced to pay kickbacks to an illegal enterprise for required services. A RICO claim was allowed even though defendant claimed that the inflated price was still reasonable so that no injury to competition had occurred. It was enough that the plaintiff's alleged injury was the *kind* of injury which Congress identified as threatening competition.

In *Bankers Trust Co. v. Rhoades,* 741 F.2d 511 (2d Cir.1984), in affirming the dismissal of a civil RICO claim, the Second Circuit stated that "if a complaint alleges

an injury that is caused by the defendant's predicate acts, rather than by its use of a pattern of racketeering activity in connection with a RICO enterprise" then a civil RICO claim will not lie. *Id.* at 516. In dictum, the Court stated that a civil RICO claim does not require injury to plaintiff's ability to compete or an impact on competition as such. *Id.* at note 6. The Court, *id.* at 517, gave two examples of situations in which plaintiff's injury would be attributable to a pattern of racketeering activity rather than attributable to individual predicate acts:

> For example, a plaintiff who is victimized by a defendant enterprise's multiple acts of arson may thereafter be denied fire insurance as a result of his fire history; such a plaintiff whose property subsequently suffers innocent fire damage would be unable to obtain reimbursement for the damage .... Or, a plaintiff might be forced to incur an unwanted debt or to take on an unwanted business partner because an enterprise has placed his business in jeopardy by using felonious means to cause a number of his customers to withhold their custom.

In *Furman v. Cirrito,* 741 F.2d 524 (2d Cir.1984), the Court, in affirming the dismissal of a civil RICO suit, stated, *id.* at 525:

> ... the district court concluded that no "separate, distinct racketeering enterprise injury" had been alleged, that the RICO claim was therefore legally deficient, and, there being no other basis for federal jurisdiction, that the complaint should be dismissed. Although this panel concludes that neither the language of the statute nor its legislative history imposes such a requirement, we are compelled to affirm the district court's judgment based on the two recently filed, controlling opinions in this court [*Sedima, supra,* and *Bankers Trust, supra* ].

The Court stated that the sole issue in the case before it was whether a plaintiff in a civil RICO suit must allege "a separate, distinct racketeering enterprise injury", *id.* at 526, which injury must be "above and beyond the injury caused by the predicate acts of racketeering activity", *id.* at 525.

## 2. THE INSTANT CASE

The complaint alleges a massive conspiracy to extract money from plaintiff by means of fraudulent automobile insurance claims. The defendants include adjusters and appraisers employed by plaintiff, insurance brokers, automobile dealers, automobile body shop operators, an employee of the New York Automobile Insurance Plan, and persons alleged to have submitted fraudulent claims or to have knowingly negotiated checks issued on the basis of such claims.

In contending that the "racketeering injury" requirement of *Sedima, supra,* and *Bankers Trust, supra,* is satisfied here, plaintiff lays great emphasis upon the fact that plaintiff's complaint and other papers contain allegations that bribery and kickbacks were used to induce plaintiff's own employees to participate in the conspiracy, and that in one instance the conspirators intimidated an appraiser unwilling to accept kickbacks by firing a bullet over his head.

As we read the *Bankers Trust* decision, the decision stands for the proposition that the plaintiff in a civil RICO case must show that the injury plaintiff suffered as a result of a set of acts is greater than the sum total of the injuries which plaintiff would have suffered from each individual act had such act occurred in isolation. In the instant case, the racketeering activity which plaintiff alleges took place consists primarily of acts of mail fraud. Specifically, some of the defendants are alleged to have submitted fraudulent insurance claims to plaintiff through the mails, and to have received from plaintiff through the mails checks issued by plaintiff on the basis of such claims.[2] If

---

**2.** Of course, plaintiff does not allege that each and every one of the defendants personally performed the physical acts of submitting fraudulent claims through the mails and receiving

checks issued on the basis of such claims through the mails.

In *United States v. Ruggiero,* 726 F.2d 913 (2d Cir.1984), the court stated that "for the govern-

we treat each instance in which a fraudulent claim was submitted and a check received on the basis of such claim as constituting a single act of mail fraud, then the injury to plaintiff resulting from the set of acts of mail fraud is simply the sum total of the injuries resulting from each individual act of mail fraud. Put another way, the injury to plaintiff in this case is simply the sum total of the amounts of the individual checks. Consequently, it would appear that *if Bankers Trust* is controlling here *then* the RICO claim must be dismissed.

It may be objected that the alleged racketeering activity in the instant case is not limited to mail fraud. For example, plaintiff alleges that in one instance a conspirator intimidated an appraiser who refused to participate in the conspiracy by firing a bullet over the appraiser's head. This act would constitute an "act or threat involving murder" and hence a "racketeering activity." 18 U.S.C. § 1961(1)(A). However, racketeering activity other than mail fraud injured plaintiff only insofar as such racketeering activity facilitated mail fraud. In other words, such racketeering activity may have made the mail fraud possible, but did not cause any injury over and above that caused by the individual acts of mail fraud, assuming once again that the mailing in of a fraudulent claim and the receipt of a check issued on the basis of such claim constitutes a single act of mail fraud.

It may also be objected that the act of mailing in a fraudulent claim and the act of receiving a check issued on the basis of such claim should be treated as separate acts of mail fraud. However, we seriously doubt that the panel which decided *Bankers Trust* would so treat them.

For the above reasons, we believe that *if Bankers Trust* is controlling here *then* the RICO claim should be dismissed.

As we read the *Sedima* decision, the decision stands for the proposition that the plaintiff in a civil RICO case must show that it has suffered an injury of the kind likely to harm competition, irrespective of whether the particular injury did in fact harm competition. We are uncertain as to what kinds of injury the *Sedima* Court would regard as likely to harm competition.

ment to convict on a RICO conspiracy it must prove that defendant himself at least agreed to commit two or more predicate crimes." *Id.* at 921. However, the court also stated that the act of conspiring to commit a predicate act may *itself* be a predicate act in certain cases. *Id.* at 918–19. Specifically, the court explained, the act of conspiring to commit any substantive offense enumerated in 18 U.S.C. § 1961(1)(A) would constitute an "act or threat involving" such offense, and would (if chargeable under state law and punishable by imprisonment for more than one year) itself constitute a predicate act under § 1961(1)(A). Similarly, the court explained, the act of conspiring to commit any substantive offense enumerated in § 1961(1)(D) would constitute an "offense involving" such offense, and would itself constitute a predicate act under § 196(1)(D). By contrast, the court explained, the act of conspiring to commit a crime indictable under any of the U.S.Code sections enumerated in § 1961(1)(B) and § 1961(1)(C) would not constitute an "act which is indictable under" such enumerated sections (although such act would be indictable under the conspiracy statute, 18 U.S.C. § 371), and would not itself constitute a predicate act under § 1961(1)(B) or § 1961(1)(C). The court thus implied that a participant in a criminal enterprise may under some circumstances be convicted under § 1962(c) or § 1962(d) even if he did not agree to personally perform any substantive offense.

Applying the above reasoning, it is clear that *conspiracy to commit mail fraud* is not itself indictable under 18 U.S.C. § 1341 (the mail fraud statute), and so is not itself a predicate act under § 1961(1)(B). However, *aiding and abetting mail fraud* would, pursuant to 18 U.S.C. § 2, be indictable under 18 U.S.C. § 1341, and hence would be a predicate act under § 1961(1)(B).

For reasons which will become clear, it is unnecessary for us to determine whether plaintiff's allegations concerning the conduct of any given defendant involved in the instant motions would, if true, make out a violation of § 1962(c) or § 1962(d) by such defendant.

We would note in passing that RICO, as interpreted by case law, appears extremely complex. The concept of conspiracy appears in RICO on at least three levels. First, a conspiracy to commit certain types of racketeering activity may *itself* constitute "racketeering activity" under § 1961(1)(A) and § 1961(1)(D). Second, participation in a criminal enterprise (i.e. a conspiracy) affecting commerce, where the participant engages in or agrees to engage in a pattern of racketeering activity, *is a violation of § 1962(c)*. Third, a conspiracy to violate § 1962(c) is *itself* a violation of § 1962(d).

It would appear that *any* kind of injury which a business is capable of suffering has a strong potential for harming competition. The court in *Sedima* stated, 741 F.2d at 496, that the plaintiff must show "injury different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter." In the instant case, plaintiff has certainly not suffered "injury different in kind from that occurring as a result of the predicate acts themselves". Plaintiff's injury is that it has been defrauded; the predicate acts consist primarily of mail fraud. We are also at a loss to determine whether plaintiff's injury was "caused by an activity which RICO was designed to deter", as we are uncertain as to the meaning of this phrase. We are therefore unable to determine with certainty the proper effect of the *Sedima* decision upon the disposition of this case.

In *Furman,* the court, relying upon *Sedima* and *Bankers Trust,* felt compelled to rule that the plaintiff in a civil RICO case must show injury "above and beyond the injury caused by the predicate acts of racketeering activity". The court did not elaborate on this requirement. We are therefore unable to determine with certainty the proper effect of the *Furman* decision upon the disposition of this case.

We have stated our belief that if *Bankers Trust* is controlling here the RICO claim should be dismissed. Since we are uncertain as to the effect of the *Sedima* decision, we will assume that *Sedima* is consistent with *Bankers Trust.* Further, if there is a conflict between *Sedima* and *Bankers Trust,* then *Bankers Trust* must prevail because it is the more recent decision. Further, since the court in *Furman* felt compelled to follow *Bankers Trust* and did not expressly limit the holding in *Bankers Trust,* we feel compelled to follow *Bankers Trust.*

■ For the above reasons, the RICO claim should be dismissed. It is therefore unnecessary for us to consider the issue of the "conviction requirement", which has been raised by Hyfin and also by Falcone.

For the record, however, we would like to express our complete agreement with the opposition to the "conviction requirement" expressed in Judge Cardamone's dissent in *Sedima,* as well as our general agreement with the opposition to the "racketeering injury requirement" expressed in Judge Cardamone's dissents in *Sedima* and *Bankers Trust* and in Judge Pratt's opinion in *Furman.* While we sympathize with the desire to place limits upon a statute which, in our opinion, has been extended far beyond its intended scope, we believe that, barring reconsideration of *United States v. Turkette, supra* (holding that infiltration of legitimate enterprise is not required for violation of § 1962(c)), the remedy should come from Congress rather than the courts.

## III. CONCLUSION

It is hereby ORDERED that:

1. The Clerk shall not enter judgment at this time;

2. Defendant Hyfin's motion to dismiss the Eighth (RICO) cause of action is granted, but this order shall not affect the validity of the judgment previously entered against defendants Siff and D'Ambra;

3. Defendant Falcone's motion for partial summary judgment is deemed moot;

4. Decision is reserved on plaintiff's motion for summary judgment against ten defendants;

5. The Plaza defendants' motion for leave to amend their answer is granted, but this order shall not be construed as determining the validity of any claims asserted therein, or as altering whatever legal consequences would otherwise flow from the judgment previously entered against defendants Siff and D'Ambra and from the post-judgment settlement agreement between plaintiff and Siff approved by the Court after notice to all parties;

6. It appearing that the order dismissing the RICO cause of action involves a controlling question of law as to which there is substantial ground for difference of opinion, i.e. "Do the facts alleged in the

complaint and other papers make out a claim for relief against any defendant under 18 U.S.C. § 1964(c)?'', and that an immediate appeal from that order may materially advance the ultimate termination of this litigation, that order is hereby certified as being appropriate for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

SO ORDERED.